RECEIVED
IN MONROE, LA
APR 0 3 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| JASON PEPPERS | CIVIL ACTION NO. 04-2356 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ARIES MARINE CORP., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 25] filed by Aries Marine Corporation ("Aries"). On January 4, 2006, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 53] recommending that Aries' Motion for Summary Judgment be denied. On January 11, 2006, Aries filed "Written Objections to the Proposed Findings, Conclusions, and Recommendations Contained in the Report and Recommendation on Aries Marine Corporation's Motion for Summary Judgment" ("Objections"). Peppers did not file a response.

For the following reasons, the Court DECLINES TO ADOPT the Report and Recommendation of Magistrate Judge Hayes and GRANTS Aries' Motion for Summary Judgment.

I. **Facts**[1]

Peppers was employed as a roustabout by Nabors Offshore Drilling Co.[2] He was assigned to an offshore fixed platform owned by Devon and located in the Gulf of Mexico.

On June 26, 2004, equipment was being moved from the Devon platform to the deck of the M/V *Calvin Bayne*, a vessel owned and operated by Aries. Peppers was injured while loading an annular blowout preventer ("BOP") manufactured by Hydril Company, L.P. ("Hydril") onto the deck. The BOP was being moved from the Devon platform to the deck of the vessel in a "rig move." During this maneuver, Nabors' employees on the platform attached four steel cables or "slings" to the BOP. At one end, the slings are attached to a crane line with a d-ring at the "headache ball."[3] At the other end, each of the four slings has a shackle, a "u"-shaped steel device. A pin screws through the end of the "u" into the shackle hold or pad eye.

Don Foreman ("Foreman"), Nabors' crane operator, had lowered the BOP onto the back deck of the vessel, and Peppers and another roustabout, Fred Carmouche ("Carmouche"), were unshackling the slings. According to Carmouche and Peppers, there was slack in the lines, and they had already unshackled two slings next to each other and were moving to the other side to unshackle the remaining slings. Before Peppers could unshackle another sling, the BOP turned or tipped over and pinched Peppers' leg between it and another piece of equipment. Foreman

---

[1] The Court finds that Magistrate Judge Hayes accurately recounted the facts, but provides them here for clarity.

[2] Nabors is not a party to this lawsuit.

[3] There was some testimony that there was also a "stinger" or more line between the d-ring and the headache ball, but that has no bearing on the outcome of the Motion for Summary Judgment.

2

picked up the BOP using only the two slings in order to get it off Peppers' leg. Peppers received such serious injuries to his leg that it was eventually amputated.

The witnesses described the seas as between one and three feet, or as relatively calm, at the time of the accident. Under such conditions, the vessel would have continued to move up and down, but there would have been no significant movement.

The sideways movement of the vessel away from the platform was under the control of the person in the wheelhouse, which, according to his testimony, was Captain Gary Pruett ("Pruett"). Pruett used dynamic positioning to maintain control of the vessel.

Peppers filed a negligence claim against Aries under § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S. § 901, *et seq.*[4], under the theory that Aries' vessel must have moved away from the platform, causing enough movement to tip the BOP. Aries argues that there is no evidence to support Peppers' theory.

## II. Law and Analysis

Under § 905(b) of the LHWCA, Peppers may only recover from Aries if its negligence was the proximate cause of his injury. Although a vessel owner has more than one duty under § 905(b), the only duty at issue in this case is whether Aries failed to exercise due care in maintaining equipment and areas over which it had "active control" during the stevedoring operation by Nabors. More specifically, the issue is "whether Aries was negligent in maintaining the proper position of the [*Calvin Bayne*] while the Nabors' crew was offloading equipment from the platform." [Doc. No. 53, p. 3].

In her Report and Recommendation, Magistrate Judge Hayes concluded as follows:

---

[4]Peppers also filed a products liability claim against Hydril.

> There are disputed issues of fact as to what caused the BOP to tip over and injure Pepper[s]. If the Calvin Bayne shifted up or down due to the natural motion of the water and caused the slack in the lines to tighten and tip the BOP, Aries is not liable. However, **if plaintiff can prove that the vessel shifted away from the platform due to Aries' negligence, it could be found liable** to maintain the position of the Calvin Bayne, over which it had active control during cargo operations. After reviewing the facts and testimony provided, the cause of the accident is not clear, and it is possible that the trier of fact could find that the accident was caused by the failure of Aries to maintain the vessel's position.

[Doc. No. 54, pp. 3-4 (emphasis added)]. Therefore, Magistrate Judge Hayes recommended that the Court deny the Motion for Summary Judgment.

In its Objections, Aries argues strenuously that Magistrate Judge Hayes incorrectly applied the summary judgment standard when she found that it was "possible" that Peppers could prove negligence by Aries at trial. Aries contends that it met its burden as movant by presenting the testimony of Foreman, the crane operator, that the vessel was "stationary" and did not move. Aries further contends that Peppers cannot rebut its evidence because no eyewitness to the accident saw the vessel move away from the platform.

The Court agrees with Aries. In its review of the facts, the Court finds that Aries has correctly characterized the testimony of Foreman. Because he was sitting on the crane attached to the Devon platform, Foreman was above the vessel and could see its movement. He testified that the vessel was stationary and that, if it had been moving, he would have followed the movement with the crane line. Additionally, none of the remaining witnesses testified that the vessel moved immediately prior to the accident. Pruett, the captain of the vessel, testified that the dynamic positioning system was functioning to prevent sideways movement. Randy Dykes ("Dykes"), a toolpusher and Peppers' supervisor, was on the platform watching Peppers and Carmouche up to the point that they unshackled the first two slings. He testified that the vessel

4

did not drift away from the rig while he was watching it seconds before the accident. Carmouche, the other roustabout, did not observe the vessel move out of position. Even Peppers could not testify that the vessel had moved away from the platform.[5]

Although Peppers did not respond to Aries' Objections, he argued in his opposition to the Motion for Summary Judgment that there was a genuine issue of material fact based on the testimony of Pruett. Pruett admitted that the waves were constantly trying to move the vessel away from the platform, but that the dynamic positioning was working to keep the vessel from moving. Pruett testified that his duty hours were 8 A.M. to 8 P.M. unless the mate needed him. Because this accident occurred at 7:45 A.M., Peppers argues that Pruett would not have been in the wheelhouse.[6] If so, the first mate, Bobby Bergeron ("Bergeron"), would have been navigating the vessel and would not have used dynamic positioning, but would have manually controlled the movement of the vessel.

However, Peppers' arguments regarding Pruett do not raise a genuine issue of material fact for trial. The Court has reviewed Pruett's deposition. Pruett changed his testimony about

---

[5] Peppers did state that he heard the vessel's thrusters that morning as they worked to keep the vessel stationary, but could not hear the thrusters when he was busy unloading.

[6] There appears to be some confusion about the exact time of the accident. Peppers testified that they started working about 6:30 or 7:00 A.M., and the accident occurred about two hours later. Under further questioning, he agreed that the accident occurred about 8:00 A.M. His supervisor, Dykes, stated that the employees had a meeting at 5:30 A.M. and began moving equipment around 6:30 or 6:45 A.M. Foreman, the crane operator, recalled only that they began moving equipment around 6:00 A.M. and that the accident occurred after 7:00 A.M. Carmouche, the other roustabout, could not remember exactly when the accident occurred, but said around 8:30 A.M. Regardless, the time of the accident does not change the Court's determination of the Motion for Summary Judgment.

5

his duty hours when he was told that the accident occurred at 7:45 A.M. Pruett explained that he must have been working 6:00 A.M. to 6:00 P.M. because he had a different first mate. He testified that he knows he was in the wheelhouse alone when "the guy got hurt." (Pruett Deposition, p. 30). Bergeron has also provided an affidavit stating that he was "not on duty nor . . . present in the wheelhouse" when Peppers was injured and that he has personal knowledge that Pruett was on duty at that time. [Doc. No. 35, Exh. S, ¶ 3]. Other than suggesting that Pruett is not credible, Peppers has presented no evidence to dispute Pruett's testimony.[7] Moreover, even if Peppers could show that Bergeron had been at the wheel, there is no evidence that the vessel moved sideways away from the platform immediately prior to the accident.

There is no other evidence to support a theory of negligence against Aries. In his deposition, Richard Grayson, Nabors' Health, Safety, and Environmental Manager, offers another theory on the cause of the accident.[8] According to Grayson, the Nabors investigation concluded that the accident occurred because the slings became hung up on the BOP when the up and down movement of the vessel caused the slings to draw tight. The crane operator has to leave slack in the lines, so the roustabouts can unhook the equipment being unloaded, but if the vessel moves up and down more than was anticipated, it can cause the lines to tighten. Grayson testified that it is also possible that the shackle "flip[ped] into a less desirable position," causing the slack in the line to tighten. [Doc. No. 60, Exh. A, p.14]. Nabors' review team suggested that in the future slings should be unhooked from the crane before the shackles are removed.

---

[7]Chuck Boudreaux, another Aries employee, also testified that Pruett was in the wheelhouse at the time of Peppers' accident. [Doc. No. 35, Exh. V].

[8]Aries submitted Grayson's deposition with its objections because the deposition was not available until after Magistrate Judge Hayes issued her Report and Recommendation.

Peppers argues that he, Foreman, and Carmouche all testified that there was slack in the lines to the BOP, suggesting that Nabors' theories are incorrect. Carmouche testified that he did not see the slings get "hung up." [Doc. No. 33, Exh. 4, p. 57]. Peppers says that he would have gotten soaked if the vessel had downward movement that caused the slings to tighten.

The Court does not know with certainty what caused Peppers' accident, but the Court does not have to make this determination in order to rule on Aries' Motion for Summary Judgment. Aries has presented testimony that the vessel did not move away from the platform and thus could not have caused the accident. Peppers has not presented any evidence that the vessel moved away from the platform. Peppers has suggested that the vessel might have moved because the first mate was navigating, but a suggestion is not evidence. Peppers then "assume[s the accident happened] . . . because the boat kept drifting out and it tightened them slings up." [Doc. No. 33, Exh. 1, p. 102]. Peppers has attempted to show that other theories of the accident are not credible and theorized that the sideways movement of the vessel caused the accident, but he has failed to present evidence creating an issue of fact for trial. In the words of his co-worker Foreman, all the theories about Peppers' accident are "just speculation." [Doc. No. 33, Exh. 3, pp. 29-30]. Speculation is not enough. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) ("Although the panel majority attempted to assume facts and present a theory upon which the plaintiffs might have recovered, it was not free to amend the plaintiffs' pleadings or to assume facts that might be proved but are not established by the record. The absence of evidence to support the plaintiffs' theories of recovery made this case clearly and plainly appropriate for summary judgment.").

## III. Conclusion

The Court DECLINES TO ADOPT the Report and Recommendation of Magistrate Judge Hayes. Aries' Motion for Summary Judgment is GRANTED, and Peppers' claims against Aries are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this ___3___ day of ___April___, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE